## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-20-174-PRW |
| | ) | |
| 1. JEREMY LYNN GEIS, | ) | |
| 2. KAELEY BREZE-ANN COFFEY-GEIS, | ) | |
| 3. WANDA F. MEYERS, individually, and as | ) | |
| TRUSTEE of the WANDA F. MEYERS | ) | |
| TRUST, | ) | |
| 4. FORD MOTOR CREDIT, LLC., | ) | |
| 5. WESTERN EQUIPMENT, | ) | |
| 6. DISCOVER CARD, | ) | |
| 7. ENGLAND FORD, | ) | |
| 8. KIOWA COUNTY TREASURER, | ) | |
| 9. KIOWA COUNTY BOARD OF COUNTY | ) | |
| COMMISSIONERS, | ) | |
| Defendant(s). | ) | |

## COMPLAINT FOR FORECLOSURE

1.  Jurisdiction depends upon 28 U.S.C. § 1345.

### First Claim for Relief

2.  The Plaintiff, United States of America, ex rel. Farm Service Agency ("FSA"), United Stated Department of Agriculture, holds: promissory notes, mortgages, financing statements, and security agreements, attached hereto as Exhibits 1-10 incorporated herein and made a part hereof, executed by Defendants Jeremy Lynn Geis and Kaeley Breze-Ann Coffey Geis.

3.  Defendant Jeremy Lynn Geis defaulted on payments of said promissory notes, mortgages, financing statement, and security agreements, as set forth below. Therefore,

plaintiff is entitled to judgment on the stated and attached security documents as stated

here:

Principal ............................................................................................ $172,217.72
Accrued interest as of August 2, 2019 ...................................................... $9,302.09
Amount due as of August 2, 2019 ........................................................ $181,519.81

plus accruing interest on the principal at the rate of $5.8978 *per diem* from August 2, 2019

until the date of judgment.

4.   Legal description of the mortgaged premises:

**SURFACE RIGHTS ONLY IN AND TO: THE SW/4 OF THE
SW/4 OF THE NW/4 OF SECTION 20, TOWNSHIP 5 NORTH,
RANGE 15 W.I.M., KIOWA COUNTY, OKLAHOMA**

5.   Defendant Wanda F. Meyers, individually, and as Trustee of the Wanda F. Meyers

Trust, may claim some right title or interest in the mortgaged premises, but such interests

are inferior and subordinate to the mortgage lien of plaintiff.

6.   Defendant Ford Motor Credit, LLC may claim some right title or interest in the

mortgaged premises, but such interests are inferior and subordinate to the mortgage lien of

plaintiff.

7.   Defendant Western Equipment may claim some right title or interest in the

mortgaged premises, but such interests are inferior and subordinate to the mortgage lien of

plaintiff.

8.   Defendant Discovery Card may claim some right title or interest in the mortgaged

premises as a result of a liens on the chattel, but such interests are inferior and subordinate

to the mortgage lien of plaintiff.

9.   Defendant England Ford may claim some right title or interest in the mortgaged

premises as a result of a liens on the chattel, but such interests are inferior and subordinate to the mortgage lien of plaintiff.

10. Defendants Kiowa County Treasurer and Kiowa County Board of County Commissioners as a result of personal property taxes, may claim some right title or interest in the mortgaged premises, but such interests are inferior and subordinate to the mortgage lien of plaintiff.

10. Defendant Kaeley Breze-Ann Coffey Geis may claim some right title or interest in the mortgaged premises, but such interests are inferior and subordinate to the mortgage lien of plaintiff.

WHEREFORE, plaintiff prays for judgment against Defendant Jeremy Lynn Geis in the sum of $181,519.81 as of August 2, 2019, together with accruing interest at the rate of $5.8978 *per diem* from August 2, 2019 to the date of judgment, and for foreclosure of its mortgage lien, and its first lien priority against all defendants and sale of the mortgaged premises pursuant to judgment. **Plaintiff elects to sell this property with appraisal.**

## Second Claim for Relief

1. Defendant Jeremy Lynn Geis defaulted on promissory notes, security agreements, and financing statements, and motor vehicle liens, attached hereto as Exhibits 1-10, incorporated herein and made a part hereof. Plaintiff is entitled to judgment for the amount due on the notes and/or agreements, for the sum of $181,519.81, which includes taxes paid, costs, advances, accrued interest, etc., as of August 2, 2019, plus accruing interest on the stated amount due at the rate of $5.8978 *per diem*, advances expenses, late charges and costs.

2.  Plaintiff is entitled to foreclosure of its chattel mortgage liens and sale of the mortgaged chattels in partial satisfaction of the notes and/or agreements and said debt owing on the same.

3.  The following is a list of the financed chattel:

## EQUIPMENT

| Qty | Collateral | Manufacturer | Size/Year | Serial No. |
|---|---|---|---|---|
| 1 | Trailer-gooseneck | W&W | 6.8 X 32/ 2008 | 11W5S32334W279974 |
| 1 | Trailer | Neckover | 6.8 X 20/ 1991 | OL2072631019749 |
| 1 | Stock Trailer | Shopmade | 6 x18 | |
| 1 | Flat Trailer - gooseneck | Holden | 8 X 40/ 1991 | 12HG24821NS063735 |
| 2 | Creep Feeders | Baker | | |
| 1 | Welder w/ trailer rig | Miller | 250/ 2009 | LG089230 |
| 1 | 4-wheeler | Artie Cat | 500/ 2005 | 4UF04ATV247242383 |
| 1 | Tractor | Versatile | Model 936 | SN-27042 |
| 1 | Trailer | Circle M | 2013 | 1C9GS32270A634022 |
| 1 | Pickup | Chevrolet | 2003 | |
| 1 | Combine | John Deere | Model 7720 | |

## LIVESTOCK AND CROPS

| Qty | KIND | BREED | COLOR | WEIGHT/AGE |
|---|---|---|---|---|
| 15 | Calves | Mixed | Mixed | 250 lbs |
| 1 | Bull | Angus | Black | |
| 26 | Cows | Mixed | Mixed | |

4.  Defendant Ford Motor Credit, LLC may claim some right title or interest in the mortgaged equipment, as a result of a liens on the chattel, but such interests are inferior and subordinate to the mortgage lien of plaintiff.

5.  Defendant Western Equipment may claim some right title or interest in the mortgaged equipment, as a result of a liens on the chattel, but such interests are inferior and subordinate to the mortgage lien of plaintiff.

6.  Defendant Discovery Card may claim some right title or interest in the mortgaged equipment, as a result of a liens on the chattel, but such interests are inferior and subordinate to the mortgage lien of plaintiff.

WHEREFORE, plaintiff prays for judgment *in rem* and *in personem* against Defendant Jeremy Lynn Geis in the sum of $181,519.81 as of August 2, 2019, together with accruing interest at the rate of $5.8978 *per diem* from August 2, 2019 to the date of judgment; and for foreclosure of its mortgage liens and security agreements, determination of its first lien priority against all defendants and sale of the chattels, equipment, cattle and vehicles pursuant to judgment.

TIMOTHY J. DOWNING
U.S. ATTORNEY

*s/KAY SEWELL*
KAY SEWELL, OBA 10778
Assistant U.S. Attorney
210 Park Avenue, Suite 400
Oklahoma City, OK 73102
(405) 553-8807 phone / 553-8885 fax
Kay.Sewell@usdoj.gov

5

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

This form is available electronically.

| **FSA-2026** (12-05-12) | **U.S. DEPARTMENT OF AGRICULTURE** Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1. Name JEREMY LYNN GEIS | | 2. State OKLAHOMA | 3. County KIOWA |
|---|---|---|---|
| 4. Case Number 42-38-~~1003~~07847 | 5. Fund Code 44 | 6. Loan Number 01 | 7. Date 04/02/2013 |

| 8. TYPE OF ASSISTANCE OL | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

☒ Initial loan  ☐ Conservation easement  ☐ Deferred payments

☐ Consolidation  ☐ Rescheduling  ☐ Debt write down

☐ Subsequent loan  ☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)* HOBART, OKLAHOMA 73651 or at such other place as the Government may later designate in writing, the principal sum of *(b)* ONE HUNDRED SEVENTY-FIVE THOUSAND AND ZERO /100 - - - - - - - - - dollars *(c)* ($ 175,000.00 , plus interest on the unpaid principal balance at the **RATE** of *(d)* ONE AND ONE-EIGHTH percent *(e)* 1.1250 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* SEVEN (7) installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 9,821.00 | 04/02/14 | $ 9,821.00 | 04/02/15 |
| $ 9,821.00 | 04/02/16 | $ 9,821.00 | 04/02/17 |
| $ 9,821.00 | 04/02/18 | $ 9,821.00 | 04/02/19 |
| $ 127,971.00 | 04/02/20 | $ | |

and *(d)* $ 9,821.00 thereafter on the *(e)* APRIL 2ND of each *(f)* YEAR until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* SEVEN (7) years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

Initial JLG  Date 4-2-13

**FSA-2026** (12-05-12)                                                                                     Page 2 of 3

13.  Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14.  Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15.  Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16.  Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17.  If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE/<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST RATE | (d)<br>DATE<br>*(MM-DD-YYYY)* | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL.<br>DUE<br>*(MM-DD-YYYY)* |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18.  Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19.  If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial ____JLL____  Date _4-2-13_

20.  The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21.  Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22.  This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8.  This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23.  Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

JEREMY LYNN GEIS (BORROWER)
ROUTE 1 BOX 47
MOUNTAIN VIEW, OK  73062

NOTE:   The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.).  The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

Form Approved - OMB No. 0560-0237
This form is available electronically. *(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)*

| **FSA-2026** (12-05-12) | **U.S. DEPARTMENT OF AGRICULTURE** Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1. Name JEREMY LYNN GEIS | | 2. State OKLAHOMA | 3. County KIOWA |
|---|---|---|---|
| 4. Case Number 42-38-●●●●●7847 | 5. Fund Code 44 | 6. Loan Number 02 | 7. Date 04/02/2013 |

| 8. TYPE OF ASSISTANCE OL | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

☒ Initial loan ☐ Conservation easement ☐ Deferred payments

☐ Consolidation ☐ Rescheduling ☐ Debt write down

☐ Subsequent loan ☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*   HOBART, OKLAHOMA 73651   or at such other place as the Government may later designate in writing, the principal sum of *(b)*  TWENTY SEVEN THOUSAND - - - - - dollars *(c)* ($  27,000.00   ) , plus interest on the unpaid principal balance at the RATE of *(d)* ONE AND ONE-FOURTH percent *(e)*  1.25000   %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)*  SEVEN (7)   installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 4,053.00 | 04/02/2014 | $ 4,053.00 | 04/02/2015 |
| $ 4,053.00 | 04/02/2016 | $ 4,053.00 | 04/02/2017 |
| $ 4,053.00 | 04/02/2018 | $ 4,053.00 | 04/02/2019 |
| $ 4,053.00 | 04/02/2020 | $ | |

and *(d)* $  4,053.00   thereafter on the *(e)* APRIL 2ND   of each *(f)* YEAR   until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*  SEVEN (7)   years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

Initial  JLG    Date  4-2-13

13.  Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14.  Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15.  Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16.  Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17.  If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

18.  Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19.  If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial ___JLG___   Date ___4-2-13___

20.  The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21.  Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22.  This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8.  This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23.  Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**


*Jp Lynn Geis*
JEREMY LYNN GEIS (BORROWER)
ROUTE 1 BOX 47
MOUNTAIN VIEW, OK  73062


NOTE:     *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.).  The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

MORTG... [handwritten] Return to: FS
PAID $ [handwritten] Tax REC.# 348
MTG. TXFEE $ DO
DATE 4-2-13

DEANNA (BEAMON) MILLER
KIOWA COUNTY TREASURER
M Barnes
DEPUTY

804 W. 11th
Hobart, OK 73651

Form Approved – OMB No. 0560-0237
(See Page 6 for Privacy Act and Public Burden Statements)

**FSA-2029 OK**
(01-17-12)

**U. S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

Position 5

## MORTGAGE FOR OKLAHOMA

THIS MORTGAGE ("instrument") is made on ___APRIL 2___ , 20 _13_ . The mortgagor is ___JEREMY LYNN GEIS AND KAELEY BREZE-ANN COFFEY GEIS, HUSBAND AND WIFE___ ("Borrower") whose mailing address is ___RR 2 BOX 147,___ ___MOUNTAIN VIEW, OK 73062___ . This instrument is given to the United States of America through the Farm Service Agency, United States Department of Agriculture ("Government") located at ___804 W. 11TH, HOBART, OKLAHOMA 73651___

This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreemetns (collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 04/02/13 | $175,000.00 | 1.1250% | 04/02/20 |
| 04/02/13 | $27,000.00. | 1.2500% | 04/02/20 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of all advances and expenditures, with interest, made by the Government; and (4) the obligations and covenants of Borrower set forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government under the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 et seq. as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to Government the following described property situated in the State of Oklahoma, County or Counties ___KIOWA___

See attached Exhibit A for legal description.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions that are now or hereafter included in, affixed, or attached to "the property."

Initial _JLG_ Date _4-2-13_
_KCG_ _4-2-13_

FSA-2029 OK (01-17-12) Page 1 of 6

MORTGAGE REC.# 343

PAID $ ~~No tax~~

MTG. TXFEE $ .00

DATE 4-2-13

DEANNA (BEAMON) MILLER

KIOWA COUNTY TREASURER

M Barnes

DEPUTY

*Return to: FS*
*804 W. 11th*
*Hobart, OK 73651*

Form Approved – OMB No. 0560-0237

(See Page 6 for Privacy Act and Public Burden Statements)

**FSA-2029 OK**      **U. S. DEPARTMENT OF AGRICULTURE**      Position 5

(01-17-12)      Farm Service Agency

## MORTGAGE FOR OKLAHOMA

THIS MORTGAGE ("instrument") is made on __APRIL 2__ , 20 _13_ . The mortgagor is __JEREMY LYNN GEIS AND KAELEY BREZE-ANN COFFEY GEIS, HUSBAND AND WIFE__ ("Borrower") whose mailing address is __RR 2 BOX 147,__ __MOUNTAIN VIEW, OK 73062__ . This instrument is given to the United States of America through the Farm Service Agency, United States Department of Agriculture ("Government") located at __804 W. 11TH, HOBART, OKLAHOMA 73651__

This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements (collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 04/02/13 | $175,000.00 | 1.1250% | 04/02/20 |
| 04/02/13 | $27,000.00 | 1.2500% | 04/02/20 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of all advances and expenditures, with interest, made by the Government; and (4) the obligations and covenants of Borrower set forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government under the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 et seq. as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to Government the following described property situated in the State of Oklahoma, County or Counties __KIOWA__

See attached Exhibit A for legal description.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions that are now or hereafter included in, affixed, or attached to "the property."

Initial __JLG__  Date __4-2-13__

__KCG__    __4-2-13__

FSA-2029 OK (01-17-12) Page 1 of 6

I-2013-000574 Book 0782 Pg: 109
04/02/2013 10:50 am  Pg 0109-0115
Fee:   $ 25.00   Doc:   $ 0.00
Gear   Watson - Kiowa County Clerk
State of Oklahoma

04/02/2013   :50 am   Pg 0109-0115
Fee:   $ 25.00   Doc:   $ 0.00
Geanea Watson - Kiowa County Clerk
State of Oklahoma

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1.   **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2.   **Fees.** Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

3.   **Application of payments.** Unless applicable law or Government's regulations provide otherwise all payments received by the Government shall be applied in the following order of priority:  (a) to advances made under this instrument; (b) to accrued interest due under the note;  (c) to principal due under the note; (d) to late charges and other fees and charges.

4.   **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5.   **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation;  (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and  (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full.  Such money may, at the option of the Government, be applied on the debt whether due or not.  The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government.  In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases.  Borrower warrants that as of the date of executing this instrument no default exists under existing leases.  Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law.  Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents.  Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6.   **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government.  If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et seq. and Government regulations.  All insurance policies and renewals shall include a standard mortgagee clause.

7.   **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower.  Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements.  All such advances shall bear interest at the same rate as the note which has the highest interest rate.  All such advances, with interest, shall be immediately due and

Initial  J LC   Date  4-2-1 3

FSA-2029 OK (01-17-12) Page 2 of 6

04/02/2013    :50 am   Pg 0109-0115
Fee:   $ 25.00   Doc:   $ 0.00
Geanea Watson - Kiowa County Clerk
State of Oklahoma

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1.  **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2.  **Fees.** Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

3.  **Application of payments.** Unless applicable law or Government's regulations provide otherwise all payments received by the Government shall be applied in the following order of priority:  (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

4.  **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5.  **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6.  **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

7.  **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and

Initial _J LC_   Date _4-2-13_
_JCB_        _4-2-13_

FSA-2029 OK (01-17-12) Page 2 of 6

I2013 008674 Bk 0789 Pg 01
04/02/2013 10:5_ _m   Pg 0109-0115
Fee:    $ 25.00    Doc:    $ 0.00
Geanea Watson - Kiowa County Clerk
State of Oklahoma

payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8. **Protection of lien.** Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments; attorneys' fees, trustees' fees; court costs, and expenses of advertising, selling, and conveying the property.

9. **Authorized purposes.** Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10. **Repair and operation of property.** Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner. Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11. **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12. **Transfer or encumbrance of property.** Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13. **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14. **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15. **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and

Initial  JLG   Date 4-2-13
XCD   4-2-13

FSA-2029 OK (01-17-12) Page 3 of 6

04/02/2013     :50 am   Pg 0109-0115
Fee:   $ 25.00   Doc:   $ 0.00
Geanea Watson - Kiowa County Clerk
State of Oklahoma

periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

Initial JLV    Date 4-2-17
XCA          4-2-13

04/02/2013  10:5   .m   Pg 0109-0115
Fee:  $ 25.00    Doc:  $ 0.00
Geanea Watson - Kiowa County Clerk
State of Oklahoma

NON-UNIFORM COVENANTS.  Borrower further COVENANTS AND AGREES as follows:

27. **Default; Government's Remedies upon Default.**  Default occurs under this instrument if Borrower breaches any covenant, obligation or agreement contained in this instrument or in the note secured by this instrument.  Upon default, the Government shall give notice of the default to Borrower prior to acceleration if required by applicable law.  If the default is not cured, the Government, at its option, may:  (a) accelerate the maturity of the note and declare immediately due and payable the entire amount unpaid under the note and any other indebtedness which is secured by this instrument; (b) for the account of Borrower, incur and pay reasonable expenses for the repair and maintenance of and take possession of, operate or rent the property; (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases; (d) foreclose this instrument and sell the property in accordance with the remedies provided in this instrument and under applicable federal or state law; and  (e) enforce any and all other rights and remedies provided herein or by present or future law.  Proceeding under this instrument, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

28. **Application of foreclosure proceeds.**  The proceeds of foreclosure sale shall be applied in the following order to the payment of:  (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government and  (f) any balance to Borrower.  If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

29. **Waiver.**  Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

30. **Collection of Assigned Monies.**  Borrower agrees that the Government has the immediate right to collect and receive any and all monies covered under the assignment provided in paragraph 5 of this instrument.  In the event that Borrower receives such monies directly, Borrower will immediately deliver such monies to Government with any necessary endorsements.

31. **Entitlement to Abstracts.**  In the event that this mortgage is foreclosed or if the property is conveyed by Borrower to Government, Government shall be entitled to all abstracts and other evidences of title pertaining to the property.  Upon demand by Government, Borrower agrees to immediately deliver such abstracts and other evidences of title to Government.  The definition of "property" herein is amended to include such abstracts and other evidences of title.

32. **Replacement and Corrected Documents.**  If any document material to this loan transaction is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of this loan transaction, upon request by the Government, Borrower will comply with the Government's request to execute, acknowledge, initial and deliver to the Government any and all documentation the Government deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s).

33. **Additional Documents.**  Borrower shall, upon request by the Government, execute, acknowledge and deliver to the Government any and all additional documents, instruments and further assurances as may be necessary or proper in the Government's opinion, to effect the intent of this loan transaction or to provide the Government with the security required or contemplated for this loan transaction.

34. **Subrogation.**  If any of the proceeds of the note or advances made under the note or this instrument are used to take up outstanding liens against all or any part of the property, the Government shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by the Government by assignment or are released by the holder thereof upon payment.

Initial _JLL_  Date _4-2-13_
_TCB_  _4-2-13_

FSA-2029 OK (01-17-12) Page 5 of 6

04/02/2013  10:50 am  Pg 0109-0115
Fee:   $ 25.00    Doc:    $ 0.00
Geanea Watson - Kiowa County Clerk
State of Oklahoma

35.  **Riders to this Instrument.** If one or more riders are executed by Borrower and recorded together with this instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this instrument as if the riders were a part of this instrument. [Check applicable boxes]

☐ Extension of Lien Rider    ☐ Refinancing Rider    ☐ Other *(Specify)* _____

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

_____ (SEAL)    _____ (SEAL)
JEREMY LYNN GEIS

_____ (SEAL)    _____ (SEAL)
KAELEY BREZE-ANN COFFEY GEIS

ACKNOWLEDGMENTS

STATE OF OKLAHOMA
COUNTY OF _____ KIOWA _____ } ss:  (Individual)

On this ___2nd___ day of ___APRIL, 2013___ , before me personally appeared
JEREMY LYNN GEIS AND KAELEY BREZE-ANN COFFEY GEIS
to be known to me to be the same whose name is subscribed to the instrument, and acknowledged that (he or she) signed and delivered the instruments as (his or her) free and voluntary act, for the uses and purposes set forth.

My commission expires:
___10|16|2016___

MARCIA M. ARD
Notary Public
State of Oklahoma
Commission # 00016352 Expires 10/16/16

_Patricia M. Ard_
NOTARY PUBLIC

NOTE:  The following is made in accordance with the Privacy Act of 1974 (5 USC 552a – as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.).  The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees.  The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC  20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay).  USDA is an equal opportunity provider and employer.

I-2013-0005, . Book 0782 Pg: 115
04/02/2013 10:50 am   Pg 0109-0115
Fee:    $ 25.00      Doc:     $ 0.00
Geanea Watson - Kiowa County Clerk
State of Oklahoma

## Exhibit A

Real Estate Mortgage
JEREMY LYNN GEIS
KAELEY BREZE-ANN COFFEY GEIS
APRIL 2, 2013


Surface Rights Only In And To:

The SW/4 of the SW/4 of the NW/4 of Section 20, Township 5 North, Range
15 W.I.M., Kiowa County, Oklahoma.


JLG            4-2-1?
Initial      Date
KCG            4-2-13
Initial      Date

Form Approved - OMB No. 0560-0238
(See Page 7 for Privacy Act and Public Burden Statements).

This form is available electronically.

| FSA-2028 | U.S. DEPARTMENT OF AGRICULTURE | Position 1 |
| --- | --- | --- |
| (09-03-10) | Farm Service Agency | |
| | **SECURITY AGREEMENT** | |

1. **THIS SECURITY AGREEMENT,** *dated (a)* ___January 14___ , **2014** ___ , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) **JEREMY LYNN GEIS, KAELEY BREZE-ANN COFFEY GEIS**

(Debtor), whose mailing address is (c) RR 2 BOX 147, MOUNTAIN VIEW, OK 73062-9645

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial ⎯J6⎯   Date ⎯10-3-14⎯

**FSA-2028** (09-03-10)

(b)  All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| Jeremy Geis | 10 | WASHITA, OK | SW4SW4NW4 20-5N-15W |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _JG_    Date _10-3-14_

FSA-2028 (09-03-10)                                                                              Page 3 of 7

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items
     of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements,
     substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)*
     ___Oklahoma_____

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Tractor | JD | 4430 | good | | 4430H064574R |
| 2 | 1 | Trailer - gooseneck | W&W | 6.8 x 32 | good | 08 | 11W5S32334W279974 |
| 3 | 1 | Trailer | Neckover | 6.8 x 20 | good | 1991 | OL2072631019749 |
| 4 | 1 | Stock Trailer | Shpomade | 6 x18 | good | | |
| 5 | 1 | Flat Trailer - gooseneck | Holden | 8 x 40 | good | 1991 | 12HG24821NS063735 |
| 6 | 2 | Creep Feeders | Baker | | good | | |
| 7 | 1 | welder/w trailer rig | Miller | 250 | good | 2009 | LG089230 |
| 8 | 1 | 4wheeler | Artic Cat | 500 | good | 2005 | 4UF04ATV247242383 |
| 9 | 1 | Tractor -skid steer | Skidsteer | | Good | 2008 | T0032SK162209 |
| 10 | 1 | Trailer | Circle M | | Good | 2013 | 1C9GS3227OA634022 |
| 11 | 1 | Pickup | Chev. | pickup truck | good | 03 | |

Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be
cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial  S6     Date  10-3-14

FSA-2028 (09-03-10)

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

Oklahoma

| (2) Line No. | (3) Quantity | (4) Kind-Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Cattle - Beef - Breeding Bulls | Angus | Black | | 1 | |
| 2 | 26 | Cattle - Beef - Breeding Cows | mixed | red | | 3-6 | |
| 3 | 23 | Cattle - Beef - Calves | mixed | Blk, bwf, mixed | | 3-6y | |

Initial ___36___   Date __10-3-14__

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

### 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _JG_   Date _10-3-14_

**FSA-2028** (09-03-10)

**4. IT IS FURTHER AGREED THAT:**

(a)  Until default, Debtor may retain possession of the collateral.

(b)  **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

    (1)  Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

    (2)  Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

    (3)  A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c)  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d)  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e)  Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f)  Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g)  This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h)  If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial _J6_  Date _10-3-14_

FSA-2028 (09-03-10)                                                                                    Page 7 of 7

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

5. **CERTIFICATION**

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _____        6B. *(Date)* _10-3-14_____
    JEREMY LYNN GEIS

_____                *(Date)* _____
KAELEY BREZE-ANN COFFEY GEIS

NOTE:    *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).*

*To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

**Exhibit 4**

This form is available electronically.

Form Approved - OMB No. 0560-0238
(See age 7 for Privacy Act and Public Burden Statements).

| FSA-2028 | U.S. DEPARTMENT OF AGRICULTURE | Position 1 |
|---|---|---|
| (09-03-10) | Farm Service Agency | |

### SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** dated *(a)* _____ **April 2, 2013** _____ , is made between the United States of America, acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and *(b)*_____
  **JEREMY LYNN GEIS, KAELEY BREZE-ANN COFFEY GEIS**

(Debtor), whose mailing address is (c)_____
  **RR 2 BOX 147, MOUNTAIN VIEW, OK 73062-9645**

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial *JLG*     Date *4-2-13*
  *KCC*        *4-2-13*

FSA-2028 (09-03-10)

(b)  All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are
planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)*
within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security
Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted,
to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and Direction<br>from Named Town or Other<br>Description |
|---|---|---|---|
| Jeremy Geis | 10 | WASHITA, OK | SW4SW4NW4 20-5N-15W |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all
payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas
existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds
derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _SLG_        Date _4-2-13_
       _JCG_              _4-2-13_

FSA-2028 (09-03-10)

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)*   Oklahoma   :

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Tractor | JD | 4430 | good | | 4430H064574R |
| 2 | 1 | Trailer | W&W | 6.8 x 32 | good | 08 | 11W5S32334W279974 |
| 3 | 1 | Trailer | Neckover | 6.8 x 20 | good | 1991 | OL2072631019749 |
| 4 | 1 | Stock Trailer | Shpomade | 6 x18 | good | | |
| 5 | 1 | Flat Trailer | Holden | 8 x 40 | good | 1991 | 12HG24821NS063735 |
| 6 | 2 | Creep Feeders | Baker | | good | | |
| 7 | 1 | welder/w trailer rig | Miller | 250 | good | 2009 | LG089230 |
| 8 | 1 | 4wheeler | Artic Cat | 500 | good | 2005 | 4UF04ATV247242383 |
| 9 | 1 | Tractor | Skidsteer | | Good | 2008 | T0032SK162209 |
| 10 | 1 | Trailer | Circle M | | Good | 2013 | 1C9GS3227OA634022 |
| 11 | 1 | Pickup | Dodge | 2500 | good | 07 | 1D7HU182X8S579376 |
| 12 | 1 | Pickup | Ford | 1ton w/ bale bed | good | 2008 | 1FDWX37R08EE02090 |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial   JLC              Date   4-2-13
          KCB                     4-2-13

**FSA-2028** (09-03-10)

(d)  All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals,
     other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter
     acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited
     to the following located in the State(s) of *(1)* ___ Oklahoma ___ :

| (2) Line No. | (3) Quantity | (4) Kind or Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 5 | Cattle - Beef - Beef Cattle-Raised | xbred | black | 250 | baby | |
| 2 | 1 | Cattle - Beef - Breeding Bulls | Angus | Black | | 3 | |
| 3 | 30 | Cattle - Beef - Breeding Cows | Angus | Black | | 3 | |

Initial _J~ L 16_  Date _4-2-17_
        _KCH_        _4-2-1_ )

(e)   All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT :

(a)   Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)   Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c)   Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d)   Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e)   Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f)   Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g)   All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)   In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _JLC_____   Date _4-2-17_
_KCH_               _4-2-13_

FSA-2028 (09-03-10)

**4. IT IS FURTHER AGREED THAT :**

(a)  Until default, Debtor may retain possession of the collateral.

(b)  **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

(1)  Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

(2)  Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

(3)  A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c)  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d)  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e)  Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f)  Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g)  This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h)  If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial ___JLL___   Date _4-2-13_
___RCH___   _4-2-13_

FSA-2028 (09-03-10)                                                          Page 7 of 7

(i)  The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j)  If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k)  Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l)  **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW .**

## 5.  CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements.  If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A.  _Jer Lynn Geis_                                   6B. *(Date)* 4-2-13
     JEREMY LYNN GEIS

     _Kaeley Breze-Ann Coffey Geis_                        *(Date)* 4-2-13
     KAELEY BREZE-ANN COFFEY GEIS

NOTE:  *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees.  The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0238.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).*

*To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

ACCOUNT  STATUS

Borrower:  Jeremy Lynn Geis _____     Case number:  42-038-*****2378 _____

Co-
Borrower:  NA _____     Current date:  8/2/2019 _____

| Loan Code | Loan Type | Date of note | Principal Amount | Interest Rate | Unpaid Principal | Unpaid Interest | Daily Accrual | Amount Ahead (A) or Behind (B) |
|---|---|---|---|---|---|---|---|---|
| *44-01 | OL | 04/02/13 | $ 175,000.00 | 1.250% | $ 148,797.94 | $ 8,134.52 | $ 5.0958 | $38,776.11 (B) |
| *44-02 | OL | 04/02/13 | $ 27,000.00 | 1.250% | $ 19,427.96 | $ 1,127.75 | $ 0.6653 | $16,212.00 (B) |
| 44-98 | Admin. | 05/14/19 | $ 2,691.82 | 1.250% | $ 2,691.82 | $ 7.37 | $ 0.0922 | $2,699.19 (B) |
| 44-99 | Admin. | 08/03/17 | $ 1,300.00 | 1.250% | $ 1,300.00 | $ 32.45 | $ 0.0445 | $1,332.45 (B) |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| Total | | | | | $ 172,217.72 | $ 9,302.09 | $ 5.8978 | |

(Include and fully describe all rescheduled, reamortized, consolidated, debt set-aside, and deferred
notes, and assumption agreements above.  Staple any rescheduled notes, etc. to the active note.
Example:  44-01 and 44-02 rescheduled and consolidated to 44-03.)

**TOTAL PAYOFF:**
**$181,519.81**

Form Number MV-21-A
Revised June 2007



# OKLAHOMA TAX COMMISSION
## MOTOR VEHICLE DIVISION
### POST OFFICE BOX 269061
### OKLAHOMA CITY, OKLAHOMA 73126

# LIEN ENTRY FORM

Debtor Names and Address (Last Name First)

GEIS, JEREMY LYNN
_____
Name(s)

ROUTE 2 BOX 147
_____
Address

MOUNTAIN VIEW, OK
_____
City, State

73062
_____
Zip Code

USA, FARM SERVICE AGENCY
_____    _____
Secured Party Name                  Assignee of Secured Party Name

804 WEST ELEVENTH
_____    _____
Address                             Address

HOBART, OK
_____    _____
City, State                         City, State

73651
_____    _____
Zip Code                            Zip Code

## THIS LIEN ENTRY FORM COVERS THE FOLLOWING VEHICLE

| 2003 | CHEV | 4C | 1GCHK29U43E172425 |
|------|------|-----|------------------|
| Year | Make | Body Type | Vehicle Identification Number (VIN/HIN) |

| 04/02/2013 | 440903087005C |
|------------|---------------|
| Date of Security Agreement | Original Oklahoma Title Number |

*Janet Neighbors, FLPT*
_____    _____
Secured Party / Assignee Signature              07/02/2013
                                                Date Executed

Lender must type and print four (4) identical copies of the Lien Entry Form. Type one Lien Entry Form for each vehicle, boat or outboard motor.

One (1) copy to the Oklahoma Tax Commission, one (1) copy to the motor license agent, one (1) copy to the secured party or assignee, one (1) copy attached to the title documents to be given to the debtor.

Notice to Debtor: Oklahoma law requires a new owner to title and register his/her vehicle and pay all taxes and fees due within 30 days of acquiring ownership.

OKLAHOMA TAX COMMISSION

LIEN RECEIPT                                    131833820A7642
                                               PYMT TYPE: CHECK

VIN: 1GCHK29U43E172425   VEHYR: 2003
                         MAKE : CHEV
                         MODEL: 2KH
                         BODY : 4C

              LIEN DATE: 07/02/2013        AGNT #: 3820

              LIEN TIME: 02:05             DATE: 07/02/2013

                                          REF#: 131833820A7642

                                          LIEN FEE:    10.00

      LIEN
      DEBTOR: GEIS,JEREMY LYNN


         USA,FARM SERVICE AGENCY

         804 WEST ELEVENTH
         HOBART         OK  73651        TOTAL:        10.00
                                                        COPY 3


                OKLAHOMA TAX COMMISSION

LIEN HOLDERS RELEASE FORMS                     131833820A7642

VIN: 1GCHK29U43E172425  VEHYR: 2003 MAKE: CHEV  MODEL: 2KH   BODY: 4C
AGNT #: 3820                  LIEN DATE: 07/02/2013   LIEN TIME: 02:05
LIEN DEBTOR: GEIS,JEREMY LYNN

RR 2 BOX 147
MOUNTAIN VIEW      OK  73062

LIEN HOLDER: USA,FARM SERVICE AGENCY

804 WEST ELEVENTH
HOBART            OK  73651              REF#: 131833820A7642

TO: OKLAHOMA TAX COMMISSION
    MOTOR VEHICLE DIVISION
    P.O. BOX 269061
    OKLAHOMA CITY  OK  73126
TO WHOM IT MAY CONCERN: WE HAVE RELEASED OUR SECURITY INTEREST IN THE MOTOR
VEHICLE DESCRIBED ABOVE, EFFECTIVE ON THE DATE WHICH APPEARS BY MY SIGNATURE.
PLEASE REVISE YOUR RECORDS TO REFLECT THIS RELEASE.
SIGNATURE OF REPRESENTATIVE OF SECURED PARTY

X _____        DATE _____
                                                        COPY 3

# Kiowa County Treasurer

Welcome to our new site!  We welcome your feedback.



**Deanna Miller, Treasurer**

**Location of Treasurer's Office:**
316 S Main PO Box 900 Hobart , OK, 73651
Phone: 580-726-2362
Fax: 580-726-2360
Email: kiowacodm@yahoo.com
Office Hours : Monday - Friday
08:00 AM - 04:00 PM

MORTGAGE TAX CALCULATOR          HOME

**Tax payments updated through 7/31/19 business.**

Select Search Order:

View By Owner Name

From Tax Year: 2015
To Tax Year: 2018

○ Search BUSINESS or Owner Name(Wildcard)

● Search by First and Last Name:

[ Search ]
[ Reset ]

Enter Last Name (required)
Geis

Enter First Name (optional)
Jeremy

Show Unpaid Taxes Only ☐

### View By Owner Name

Search within results below: [_____] [Go]

View Hint

Show [10 ▾] entries

[First] [Previous] [1] [Next] [Last]

| Year | Tax ID | Owner Name | Prop. ID | Type | Base Tax | Total Due |
|------|--------|------------|----------|------|----------|-----------|
| 2018 | 14383 | GEIS, JEREMY | 0000-20-05N-15W-2-003-00 | Real Estate | 362.00 | PAID |
| 2017 | 14383 | GEIS, JEREMY | 0000-20-05N-15W-2-003-00 | Real Estate | 435.00 | PAID |
| 2016 | 14383 | GEIS, JEREMY | 0000-20-05N-15W-2-003-00 | Real Estate | 469.00 | PAID |
| 2015 | 14383 | GEIS, JEREMY | 0000-20-05N-15W-2-003-00 | Real Estate | 622.00 | PAID |

Showing 1 to 4 of 4 entries (filtered from 99,153 total entries)

Show [10 ▾] entries

[First] [Previous] [1] [Next] [Last]

Taxroll Total | Home | State Map | View Mobile Site

Powered by TM Consulting, Inc.

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] |
|---|
| JSCARBERRY |
| 405-742-1130 |

| B. SEND ACKNOWLEDGEMENT TO: (Name and Address) |
|---|
| |



20130402020318400 UC1
04/02/2013 02:00:44 PM
Book:  Page:0
PageCount:1
Filing Fee:$10.00
Doc. Tax:$.00
State of Oklahoma
County of Oklahoma
Oklahoma County Clerk
Carolynn Caudill

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S LAST NAME<br>GEIS | | FIRST NAME<br>JEREMY | MIDDLE NAME<br>LYNN | SUFFIX |
| 1c. MAILING ADDRESS<br>Rt 2 Box 147 | | CITY<br>Mountain View | STATE<br>OK | POSTAL CODE<br>73062 | COUNTRY |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE<br>ORGANIZATION<br>DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any<br>0 |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME<br>GEIS | | FIRST NAME<br>KAELEY | MIDDLE NAME<br>BREZE-ANN COFFEY | SUFFIX |
| 2c. MAILING ADDRESS<br>Rt. 2 Box 147 | | CITY<br>Mountain View | STATE<br>OK | POSTAL CODE<br>73062 | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE<br>ORGANIZATION<br>DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any<br>0 |

**3. SECURED PARTY'S NAME** (or NAME of TOTALASSIGNEE of ASSIGNOR S/P) insert only one secured party name (1a or 1b)

| 3a. ORGANIZATION'S NAME<br>UNITED STATES OF AMERICA FARM SERVICE AGENCY | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS<br>804 W. 11th | | CITY<br>Hobart | STATE<br>OK | POSTAL CODE<br>73651 | COUNTRY |

**4.This FINANCING STATEMENT covers the following collateral:**

All crops, livestock, farm products, equipment, certificates of title, goods, supplies, inventory, accounts, deposit accounts, supplies inventory, accounts, deposit accounts supporting obligations, payment intangibles, general intangibles, investment property, all entitlement benefits, and payments from all state and federal farm programs; and all proceeds, products, accessions, and security acquired hereafter. The security interest perfected secures a future advance clause and the security agreement contains an after-acquired property clause. Disposition of such collateral is not hereby authorized.

| 5. | ALTERNATIVE DESIGNATION [if applicable] | | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | | BAILEE/BAILOR | | SELLER/BUYER | | AG.LIEN | | NON-UCC FILING | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6. | THIS FINANCING STATEMENT is to be filed [for record] (or recorded) in the<br>REAL ESTATES RECORDS          Attach Addendum          [if applicable] | | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor<br>(s) [ADDITIONAL FEE]                    [optional] | | | All<br>Debtors | | | Debtor 1 | | Debtor 2 |
| 8. | OPTIONAL FILER REFERENCE DATA | | | | | | | | | | | | |

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY-UCC FINANCING STATEMENT (FORM UCC1) (REV. OS/22/O2)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
JSCARBERRY
405-742-1130

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

20171027021097860 CN1
10/27/2017 03:06:17 PM
Book:   Page:0
PageCount:1
Filing Fee:$10.00
Doc. Tax:$.00
**State of Oklahoma**
**County of Oklahoma**
**Oklahoma County Clerk**
**David B. Hooten**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 20130402020318400 | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13. |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of  Secured Party authorizing this Termination Statement.

3. ☐ **ASSIGNMENT**  (full or partial): Provide name of Assignee in item 7a or 7b and address of Assignee in item 7c and name of Assignor in item 9.
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to security interest(s) of  Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of the these two boxes:                                    AND Check one of these three boxes to:

This Change affects ☐ Debtor or  ☐ Secured Party of record | ☐ CHANGE name and/or address : Complete item 6a or 6b and item 7a or 7b and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b.

6. CURRENT RECORD INFORMATION: Complete for Party Information Change-provide only one name(6a or 6b)(use exact, full name;do not omit,modify or abbreviate any word in the Debtor's name)

OR | 6a. ORGANIZATION'S NAME

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| GEIS | JEREMY | LYNN | |

7. CHANGED OR ADDED INFORMATION:Complete for Assignment or Party Information Change - provide only one name(7a or 7b)(use exact,full name;do not omit,modify, or abbreviate any word of the Debtor's name)

OR | 7a. ORGANIZATION'S NAME

7b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

| ADDITIONAL NAME(S)/INITIAL(S) That are part of the name of this Debtor | | SUFFIX |
|---|---|---|

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. **COLLATERAL CHANGE: Also check one of these four boxes:**  ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

To continue the following financing statement original #20130402020318400 original filing date of 04/02/2013. "Continue as filed" All crops, livestock, farm products, equipment, certificates of title, goods, supplies, inventory, accounts, deposit accounts, supplies inventory, accounts, deposit accounts supporting obligations, payment intangibles, general intangibles, investment property, all entitlement accounts, and payments from all state and federal farm programs; and all proceeds, products, accessions, and security acquired hereafter. The security interest perfected secures a future advance clause and the security agreement contains an after-acquired property clause.  Disposition of such collateral is not hereby authorized.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b)(name of Assignor,if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing DEBTOR

OR | 9a. ORGANIZATION'S NAME
UNITED STATES OF AMERICA FARM SERVICE AGENCY

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)INITIAL(S) | SUFFIX |
|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY - UCC FINANCING STATEMENT AMENDMENT(FORM UCC3) (REV. 11/01/15)

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

2017092602099030 UC1
09/26/2017 01:34:47 PM
Book:   Page:0
PageCount:1
Filing Fee:$10.00
Doc. Tax:$.00
State of Oklahoma
County of Oklahoma
Oklahoma County Clerk
David B. Hooten

| A. NAME & PHONE OF CONTACT AT FILER(optional) |
| SMCSPERITT  918-825-5643 |
| B. E-MAIL CONTACT AT FILER (optional) |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME; Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any word of the Debtor's name).

| OR | 1a. ORGANIZATION'S NAME | | | | |
|----|----|----|----|----|----|
|  | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|  | GEIS | JEREMY | LYNN | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| RT 2 BOX 147 | MOUNTAIN VIEW | OK | 73062 | |

2. DEBTOR'S NAME; Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any word of the Debtor's name).

| OR | 2a. ORGANIZATION'S NAME | | | | |
|----|----|----|----|----|----|
|  | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|  | GEIS | FELISHA | NICHOLE | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| RT 2 BOX 147 | MOUNTAIN VIEW | OK | 73062 | |

3. SECURED PARTY'S NAME:(or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY ): Provide only one Secured Party name ( 3a or 3b)

| OR | 3a. ORGANIZATION'S NAME | | | | |
|----|----|----|----|----|----|
|  | THE UNITED STATES OF AMERICA FARM SERVICE AGENCY | | | | |
|  | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1505 N. GLENN ENGLISH | CORDELL | OK | 73632 | |

4.COLLATERAL: This FINANCING STATEMENT covers the following collateral:

ALL LIVESTOCK NOW OWNED AND HEREAFTER ACQUIRED.  ALL FARM EQUIPMENT AND MACHINERY.  All crops, livestock, farm products, equipment, certificates of title, goods, supplies, inventory, accounts, deposit accounts, supporting obligations, payment intangibles, general intangibles, investment property, crop insurance indemnity payments, all entitlements, benefits, and payments from all state and federal programs.  Proceeds, products, accessions, and security acquired hereafter.  The security interest perfected secures a future advance clause and the security agreement contains an after-acquired property clause.  Disposition of such collateral is not hereby authorized.

| 5. Check only if applicable and check only one box: Collateral is | | held in a Trust (see instructions) | | being administered by a Decedent's Personal Representative | |
|----|----|----|----|----|----|
| 6a. Check only if applicable and check only one box: | | | | | 6b.Check only if applicable and check only one box |
| ☐ Public- Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): | ☐ Lessee/Lessor | ☐ Consignee/Consignor | ☐ Seller/Buyer | ☐ Bailee/Bailor | ☐ Licensee/Licensor |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | |

UCC FINANCING STATEMENT (FORM UCC1) (REV. 11/01/15)

# EFS-1

## Oklahoma Effective Financing Statement

EFS No. 201301107

Oklahoma Secretary of State
Filed 04/03/2013 01:32 PM

**FILING FEE $10-** payable to Oklahoma Secretary of State
Please read instructions before completing the form.

**For Secretary of State Use Only**

Submit in triplicate with signatures in ink.

| Section I | |
|---|---|
| 1. Debtor Name, Address | 2. Debtor Name, Address |
| GEIS, JEREMY LYNN | COFFEY GEIS, KAELEY BREZE-ANN |
| RT. 2 BOX 147 | RT. 2 BOX 147 |
| MOUNTAIN VIEW, OK 73062 | MOUNTAIN VIEW, OK 73062 |

SSN/TIN ____-__-7847
Signature _____

SSN/TIN ____-__-7162
Signature _____

SECURED PARTY Name, Mailing Address

UNITED STATES OF AMERICA, FARM SERVICE AGENCY

804 WEST 11TH

HOBART, OK 73651

SSN/ TIN 43-_____38
Authorized Signature _____
VERNON D. WHITNEY,
FARM LOAN MANAGER

3. Debtor Name, Address

SSN/TIN
Signature _____

**Section II** PRODUCTS SUBJECT TO A SECURITY INTEREST. Product Code, Product Name and County Produced MUST be filled in. See current Product and County code lists. Crop year and description are optional. See instructions. The secured party has an interest in the farm products listed and the proceeds from these products while this Effective Financing Statement is active.

| Product Code | Product Name | County Produced | Crop Year | Product Description |
|---|---|---|---|---|
| 001 | CATTLE & CALVES | 00 | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

SOS/EFS-1 form 11/2009

EFS No. 201301107-C
Oklahoma Secretary of State
Filed 11/1/2017 08:04 AM

# EFS-2
## Oklahoma Effective Financing Statement

This refers to EFS-1 201301107 ___ Filed on 04/03/2013

_____ Amendment
_____ Assignment        **Please select the action(s) required**
XXXX  Continuation       **and fill out the form completely.**
_____ Partial Release
_____ Termination

**FEE $10 per action selected** payable to Oklahoma Secretary of State
Please read instructions before completing the form.
Submit in triplicate with signatures in ink.

**For Secretary of State Use Only**

| Section I | |
|---|---|
| 1. Debtor Name, Address<br><br>Geis, Jeremy Lynn<br><br>Rt. 2 Box 147<br><br>Mountain View, OK 73062<br><br>SSN/TIN [redacted] - 7847<br>Signature_____ | 2. Debtor Name, Address<br><br>Coffey Geis, Kaeley Breze-ANN<br><br>Rt. 2 Box 147<br><br>Mountain View, OK 73062<br><br>SSN/TIN [redacted]-7162<br>Signature_____ |
| SECURED PARTY Name, Mailing Address<br><br>United States of America, Farm Service Agency<br><br>804 West 11th<br><br>Hobart, OK 73651<br><br>SSN / TIN 43-0951685-38<br>Authorized Signature _Josie Scarbur_<br>FLPT | 3. Debtor Name, Address<br><br><br><br><br><br>SSN/TIN<br>Signature_____ |
| ASSIGNEE SECURED PARTY Name, Mailing Address<br><br><br><br>SSN/ TIN | |

**Section II** PRODUCTS SUBJECT TO A SECURITY INTEREST.  Product Code, Product Name and County Produced MUST be filled in.  See current Product and County code lists.  Crop year and description are optional.  See instructions.  The secured party has an interest in the farm products listed and the proceeds from these products while this Effective Financing Statement is active.

| Product Code | Product Name | County Produced | Crop Year | Product Description |
|---|---|---|---|---|
| 001 | Cattle & Calves | 00 | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

SOS/EFS-2 Form
12/2015

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV- |
| | ) | |
| 1. JEREMY LYNN GEIS, | ) | |
| 2. KAELEY BREZE-ANN COFFEY-GEIS, | ) | |
| 3. WANDA F. MEYERS, individually, and as | ) | |
|    TRUSTEE of the WANDA F. MEYERS | ) | |
|    TRUST, | ) | |
| 4. FORD MOTOR CREDIT, LLC., | ) | |
| 5. WESTERN EQUIPMENT, | ) | |
| 6. DISCOVER CARD, | ) | |
| 7. KIOWA COUNTY TREASURER, | ) | |
| 8. KIOWA COUNTY BOARD OF COUNTY | ) | |
|    COMMISSIONERS, | ) | |
|    Defendant(s). | ) | |

---

## VERIFICATION OF UNITED STATES

---

| | |
|---|---|
| STATE OF OKLAHOMA | ) |
| | ) *SS:* |
| COUNTY OF JOHNSTON | ) |

I, Clay Combes, Farm Loan Specialist, am familiar with the books and records of Farm Service Agency regarding the account of Defendant Jeremy Lynn Geis and do hereby state and verify, as follows:

1.    I have examined Promissory Notes, Mortgage, and Statement of Account and have verified the accuracy of the amount owing to the United States.

2.    That I have read the Complaint to be filed of record with this Court.  I have knowledge of the facts and figures stated therein; and that I believe the statements of fact and figures set forth are true and correct.

3.    This account is now in default.

Dated: **2 - / 4 - 2 0 2 0**

_____
CLAY COMBES
Farm Loan Specialist

**STATE OF OKLAHOMA   )**
                     **) SS**
**COUNTY OF JOHNSTON  )**

Before me on ___2- 14 - 2020___, personally appeared Clay Combes, known by me to be the identical person who executed this instrument and acknowledged to me that the same is true and correct.

Witness my hand and seal the day and year written above.

My Commission Expires:
            2-8-2023

Comm No: 07001370

_____
NAME OF NOTARY, Notary Public

RECEIVED

FEB 2 1 2020

U.S. ATTY, WDOK

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kay Sewell
Assistant United States Attorney, OBA #10778
210 W. Park Ave, Suite 400
Oklahoma City, OK 73102
405-553-8807 405-553-8885-FAX

## DEFENDANTS

1. Jeremy Lynn Geis; 2. Kaeley Breze-Ann Coffey Geis; 3. Wanda F. Meyers, individually and as Trustee of the Wanda F. Meyers Trust; 4. Ford Motor Credit, LLC.; 5. Western Equipment; 6. Discover Card; 7. England Ford; 8. Kiowa Co Treasurer; 9. Kiowa County Board of County Commissioners;

County of Residence of First Listed Defendant    KIOWA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
        Plaintiff

☐ 2   U.S. Government
        Defendant

☐ 3   Federal Question
        *(U.S. Government Not a Party)*

☐ 4   Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**　　**PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane　　☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product　　　　Product Liability |  | 　　28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | 　　Liability　　☐ 367 Health Care/ |  |  | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &　　　　Pharmaceutical |  | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| 　　& Enforcement of Judgment | 　　Slander　　　　Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'　　　　Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | 　　Liability　　☐ 368 Asbestos Personal | | ☐ 840 Trademark | 　　Corrupt Organizations |
| 　　Student Loans | ☐ 340 Marine　　　　Injury Product | | | ☐ 480 Consumer Credit |
| 　　(Excludes Veterans) | ☐ 345 Marine Product　　　　Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | 　　Liability　**PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| 　　of Veteran's Benefits | ☐ 350 Motor Vehicle　　☐ 370 Other Fraud | 　　Act | ☐ 862 Black Lung (923) | 　　Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle　　☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | 　　Product Liability　☐ 380 Other Personal | 　　Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal　　　　Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | 　　Injury　　☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury -　　　　Product Liability | 　　Leave Act | | 　　Act |
| | 　　Medical Malpractice | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS**　**PRISONER PETITIONS** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights　**Habeas Corpus:** | 　　Income Security Act | 　　or Defendant) | 　　Act/Review or Appeal of |
| ☒ 220 Foreclosure | ☐ 441 Voting　　☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party | 　　Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment　☐ 510 Motions to Vacate | | 　　26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/　　　　Sentence | | | 　　State Statutes |
| ☐ 245 Tort Product Liability | 　　Accommodations　☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -　☐ 535 Death Penalty | **IMMIGRATION** | | |
| | 　　Employment　☐ **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -　☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | 　　Other　　☐ 550 Civil Rights | 　　Actions | | |
| | ☐ 448 Education　☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | |
| | | 　　Conditions of | | |
| | | 　　Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
        Proceeding

☐ 2   Removed from
        State Court

☐ 3   Remanded from
        Appellate Court

☐ 4   Reinstated or
        Reopened

☐ 5   Transferred from
        Another District
        *(specify)*

☐ 6   Multidistrict
        Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1345

Brief description of cause:
Foreclosure

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
       UNDER RULE 23, F.R.Cv.P.

DEMAND $
181,519.81

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
02/27/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Kay Sewell, AUSA, OBA #10778

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Print          Save As...          Reset